IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MITCHELL REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:23-cv-61-ECM |
| | ) | (WO) |
| CONN'S, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.     INTRODUCTION**

Now pending before the Court is the Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Compel Arbitration. (Doc. 24). The Plaintiff Mitchell Reed ("Reed") filed an amended complaint against the Defendants Conn's, Inc. and Conn Appliances Inc. (collectively, "the Defendants") on May 2, 2023. (Doc. 22). Reed alleges race discrimination and harassment claims against the Defendants in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

The Defendants contend that Reed agreed to arbitrate any disputes that arose from his employment relationship with the Defendants.[1] They seek to compel arbitration[2] and dismiss this action, or, in the alternative, stay proceedings pending the conclusion of arbitration. Reed, however, denies agreeing to arbitrate any disputes against the

---

[1] The Defendants assert that Conn's, Inc. is not a proper party in this matter because Conn's, Inc. was never Reed's employer. As the Defendants have not requested that the Court dismiss Conn's, Inc. on these grounds, the Court declines to address the issue further at this time.
[2] The Defendants assert that both Conn's, Inc. and Conn's Appliances can enforce the arbitration agreement.

1

Defendants. He requests that this Court deny the Defendants' motion, or, in the alternative, conduct a jury trial on the issue of whether he agreed to arbitrate disputes against the Defendants. Based on a review of the record, the applicable law, and for the reasons stated, the Defendants' motion (doc. 24) is due to be DENIED without prejudice.

## II.     JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA provides:

> [a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, Congress put arbitration agreements "on equal footing with all other contracts. . . ." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25. Throughout, the FAA "creates

a body of federal substantive law," which is "applicable in state and federal court." *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984).

There are two types of challenges to the validity of arbitration agreements: the first challenges the validity of the arbitration agreement itself, and the second challenges the validity of the contract as a whole. *Buckeye Check Cashing*, 546 U.S. at 444–45. When, as in this case, a party challenges the validity of the arbitration agreement itself, the challenge may be addressed by the court. *Id.* at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Moreover, federal common law follows the severability doctrine; "an arbitration provision is severable from the remainder of the contract." *Id.* at 445.

The Court applies "ordinary state-law principles that govern the formation of contracts" when it decides whether the parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Although "the FAA preempts state law to the extent it treats arbitration agreements differently than other contracts," "state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir. 2005). Thus, the Court applies the contract law of the relevant state to determine whether the parties formed an agreement. *Id.*

Here, the parties do not dispute that Alabama law applies to the extent it is not preempted by federal law. In Alabama, "a motion seeking to compel arbitration is 'analogous to a motion for summary judgment.'" *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1319 (S.D. Ala. 2007) (quoting *Dunes of GP, L.L.C. v. Bradford*, 966 So. 2d 924,

3

925–26 (Ala. 2007)). "[A] party seeking to compel arbitration must prove '(1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce.'" *Id.* at 1318 (quoting *Allied Williams Cos., Inc. v. Davis*, 901 So. 2d 696, 698 (Ala. 2004)). If the party seeking arbitration makes the requisite showing, "the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question." *Id.* (quoting *Allied Williams Cos.*, 901 So. 2d at 698).

## IV.   DISCUSSION

In this case, the parties dispute whether Reed agreed to arbitrate his claims against the Defendants. In support of their motion to compel arbitration, the Defendants submit the declaration of Rafael Robert ("Robert"), the Vice President of Human Resources for Conn's Appliances. Robert attests that Reed completed new employee onboarding when he began working for Conn's Appliances, "which required him to acknowledge receipt of and agree to . . . Conn's Dispute Resolution Plan." (Doc. 24-1 at 3). According to Robert, Reed "could not have started his employment at Conn's" without completing onboarding and agreeing to Conn's Dispute Resolution Plan ("the Plan"). (*Id.*). Robert states that Reed electronically "had to click on the button that allowed [him] to immediately access the . . . Dispute Resolution Plan." (*Id.*). Robert claims that Reed clicked "Mark as Complete" as acknowledgment that he read, understood, and agreed to follow all of the Defendants' policies. (*Id.* at 3–4). Robert also states that Reed completed a 2021 Corporate

Policy Review where Reed was again "required to acknowledge and accept the Dispute Resolution Plan." (*Id.* at 4).[3]

In response to the Defendants' factual assertions, Reed does not contest that the Plan, if agreed to, is a valid arbitration agreement. Rather, Reed "unequivocally dispute[s] any assertion that [he] signed, agreed to, was aware of, received, and/or reviewed any document titled 'The Dispute Resolution Plan,' any agreement to arbitrate, [or] any document purporting to bind [him] to arbitration. . . ." (Doc. 28-1 at 5). Reed claims that he "did not agree to arbitration when [he] was hired, or at any time during [his] employment." (*Id.*). Reed also denies completing the digital onboarding acknowledgments that the Defendants submit in support of their motion. Reed purports that these acknowledgments were "completed by someone else." (*Id.* at 4).

The Defendants respond that the arbitration agreement is legally binding despite Reed's failure to read the agreement. Thus, they argue that Reed's acknowledgment of the Plan during onboarding, and once again during the 2021 Corporate Policy Review, is sufficient to compel arbitration. Additionally, they argue that Reed accepted the Plan by continuing his employment with the Defendants.

---

[3] The Defendants submit new evidence with their reply brief. Because Reed did not have an opportunity to respond to this new evidence, the Court declines to consider it. *See Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 Fed. App'x 896, 901–02 (11th Cir. 2019) ("When faced with a reply brief that offers new evidence . . . the district court . . . can . . . refrain from relying on any new material contained in the reply brief."). However, even if the Court were to consider this newly submitted evidence, the Court would nevertheless conclude that a genuine dispute of material fact exists in this case. *See Burch v. PJ Cheese, Inc.*, 2009 WL 10688971, at *3 (N.D. Ala. Dec. 11, 2009) (finding plaintiff entitled to trial on arbitrability when plaintiff denied signing arbitration agreement produced by defendant).

Reed responds that he has created a genuine dispute of fact as to whether he agreed to arbitrate his claims. The Court agrees. The Defendants' arguments overlook Reed's unequivocal denial that he agreed to arbitrate this case. This Court recently decided a case bearing almost identical facts to the case at hand. *See Robinson v. Conn's, Inc.*, 2023 WL 3088157 (M.D. Ala. Apr. 25, 2023). In *Robinson*, the plaintiff "'unequivocally dispute[d]' that she 'signed, agreed to, was aware of, received, and/or reviewed" her employer's arbitration agreement. *Id.* at *2. The plaintiff also attested that she "did not agree to arbitration when [she] was hired, or at any time during [her] employment." *Id.* Conn's, Inc., who is also a defendant in this case, argued that the plaintiff agreed to arbitrate her claims by acknowledging the Plan through onboarding and a 2021 Corporate Policy Review. *Id.* This Court held that the plaintiff created a genuine dispute of fact as to whether she agreed to arbitrate her claims. *Id.* The Court reasoned that the facts presented by the parties "must be resolved by a factfinder" because they were irreconcilable. *Id.*

Here, the facts at hand call for the same conclusion this Court made in *Robinson*. The parties present facts surrounding an alleged agreement to arbitrate that are irreconcilable. The cases cited by the Defendants do not dictate otherwise. In *Mattson v. WTS Int'l, Inc.*, the plaintiffs denied knowingly signing an arbitration agreement, but they did not deny that they signed an arbitration agreement. 2021 WL 1060211, at *7 (M.D. Fla. Mar. 20, 2021). Likewise, in *Wilson v. Alorica, Inc.*, the plaintiff claimed not to recall signing an arbitration agreement, but he did not deny signing an agreement. 2018 WL 2229703, at *1 (N.D. Ala. May 16, 2018). Thus, *Mattson* and *Wilson* did not involve a

factual dispute regarding whether an arbitration agreement was made.[4]  Here, however, Reed denies being party to an arbitration agreement.

The proper way to resolve this dispute of fact is through a trial by jury. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347 (11th Cir. 2017) ("[B]ecause [the plaintiff's] denial put the making of the arbitration agreement at issue, he had a statutory right under 9 U.S.C. § 4 to try that disputed issue to a jury."); 9 U.S.C. § 4 ("[T]he party alleged to be in default [of an arbitration agreement] may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury.").  In opposing the Defendants' motion to compel arbitration, Reed demanded a jury trial on the issue of whether he agreed to arbitrate his claims against the Defendants.  The Defendants have not argued that Reed's demand for a jury trial was deficient.  Accordingly, the Court finds that this case is due to be set for a jury trial on the issue of the existence of an arbitration agreement.

## V.  CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

The Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Compel Arbitration (doc. 24) is DENIED without prejudice.

---

[4] The same is true for the cases the Defendants cite in support of their argument that Reed agreed to arbitration by continuing his at-will employment.  In *Caley*, the plaintiffs did not dispute that they had notice of the arbitration agreement at issue. 428 F.3d at 1364 n.1.  In *Carusone v. Nintendo of America*, the plaintiff admitted to accepting terms that included the relevant arbitration agreement. 2020 WL 3545468, at *2 (N.D. Ala. June 30, 2020).  In *Hall v. CVS Health Corp.*, the court denied the defendant's motion to compel arbitration because the plaintiff claimed he opted out of the arbitration agreement, which created a dispute of fact suited to trial. 2018 WL 1182603, at *7 (N.D. Ala. Mar. 7, 2018).

On or before **August 1, 2023** the parties shall submit a joint report setting forth a proposed schedule for conducting any discovery necessary to conduct a jury trial on the issue of whether the parties agreed to arbitrate Reed's claims.

Done this 18th day of July, 2023.

>/s/ Emily C. Marks
>EMILY C. MARKS
>CHIEF UNITED STATES DISTRICT JUDGE